USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 0 4 2021

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------- x
CIMONTUBO – TUBAGENS E SOLDADURA, LDA,

                         Plaintiff,

       -against-

PETRÓLEOS DE VENEZUELA, S.A. and
PDVSA PETRÓLEO, S.A.,

                        Defendants.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

20 Civ. 5382 (GBD)

**GEORGE B. DANIELS, United States District Judge:**

Plaintiff Cimontubo – Tubagens E Soldadura, LDA ("Cimontubo") originally filed its motion for summary judgment in lieu of complaint pursuant to N.Y. C.P.L.R. § 3213 in the Supreme Court of the State of New York, New York County. Cimontubo asserts that Petróleos De Venezuela, S.A. ("PDVSA") and PDVSA Petróleo, S.A. ("Petróleo" but together, "Defendants") defaulted on a promissory note and note agreement for failure to pay the outstanding principal and interest balance. (Mem. of Law in Supp. of Pl.'s Mot. for Summary J. in Lieu of Compl., ECF No. 1, at 1.) Plaintiff's motion for summary judgment is GRANTED.

## I. FACTUAL BACKGROUND

### A. The Promissory Note and Note Agreement.

Cimontubo, "a private limited [liability] company organized under the laws of Portugal," is the holder of a promissory note in the amount of $35,720,631.43, executed by PDVSA on December 22, 2016 ("Promissory Note"). (Aff. of Antonio Pereira in Supp. of Pl.'s Mot. for Summary J. in Lieu of Compl. ("Pereira Aff."), ECF No. 1, ¶¶ 3, 6, 8.) PDVSA is a "company owned by the nation of Venezuela, and organized under the laws of Venezuela." (*Id.* ¶ 4.) PDVSA

1

"promised to repay Plaintiff pursuant to the Repayment Schedule attached as Exhibit A to the Promissory Note." (*Id.* ¶ 8.)

> The Promissory Note states in relevant part:
>
> PETRÓLEOS DE VENEZUELA, S.A. (herein called the "Issuer"), . . . hereby promises to pay to CIMONTUBO - TUBAGENS E SOLDADURA, LDA., . . . the principal sum of THIRTY-FIVE MILLION SEVEN HUNDRED TWENTY THOUSAND SIX HUNDRED THIRTY-ONE and 43/100th DOLLARS ($35,720,631.43), with interest (a) on the unpaid principal balance thereof based on and computed on the basis of the actual number of days elapsed on a year of 365 days, at a rate per annum equal to six and one-half percent (6.50%), payable quarterly, on March 22, 2017 (the "Initial Repayment Date") and on each day in March, June, September and December described on Exhibit A hereto occurring after the Initial Repayment Date on or prior to December 22, 2019 (the "Maturity Date" and, each such date on which payment of interest is due, including the Maturity Date, a "Repayment Date") . . . (b) on any overdue payment of principal, any overdue payment of interest, payable quarterly as aforesaid (or, at the option of the registered holder hereof, on demand), at a rate per annum of eight and one-half percent (8.50%) per annum, calculated as set forth above.

(Pereira Aff., Ex. A, 1–2.) The terms of the Promissory Note are governed by a note agreement entered into by Cimontubo, as Initial Noteholder, PDVSA, as Issuer, and Petróleo, as Guarantor, on December 22, 2016 ("Note Agreement").[1] (*Id.* ¶¶ 9–11.) Petróleo is "a company organized under the laws of Venezuela" and is a subsidiary of PDVSA. (*Id.* ¶ 5.) Pursuant to the Note Agreement, PDVSA was required to pay Cimontubo each principal and interest payment on the corresponding Repayment Date. (Pereira Aff., Ex. B, Art. II, §§ 2.03, 2.05; *see also* Pereira Aff., Ex. A, at A-1.) The Note Agreement is governed by New York law. (*Id.*, Ex. B, Art. IX, § 9.07.)

> Pursuant to Article VII of the Note Agreement, an Event of Default is defined as follows:
>
> [T]he failure to pay the principal of, or interest on any of the Notes, when such principal becomes due and payable, including at any of the Repayment Dates, by acceleration or otherwise, and such failure continues for a period of five (5) days after written notice thereof has been given to the Issuer;

---

[1] All capitalized words not otherwise defined herein are defined in the Note Agreement and Promissory Note.

2

\* \* \*

> a default in the observance or performance of any other covenant or agreement contained in the Finance Documents which default continues for a period of thirty (30) days after the Issuer receives written notice specifying the default (and demanding that such default be remedied) from the Required Noteholders. . . .

(*Id.*, Art. VII(a), (c).) An Event of Default is also defined as follows:

> [A]t any time prior to the last day of the month falling ten (10) months after the month in which the Effective Date occurs, the Issuer or the Guarantor reschedules or fails to pay when due, in whole or in part, any amount required to be paid by it under the terms of any written contract with respect to any investment (which for the avoidance of doubt shall not include contracts with respect to borrowed money obligations of the Issuer or the Guarantor) as such terms are in effect on the Effective Date, then, and in every such event (other than an event with respect to the Issuer or the Guarantor described in, paragraph (f) above), and at any time thereafter during the continuance of such event, the Required Noteholders may . . . by notice to the Issuer, declare the Notes then outstanding to be forthwith due and payable in whole or in part, whereupon the principal of the Notes so declared to be due and payable, together with accrued interest thereon and any unpaid accrued fees and all other liabilities of the Issuer accrued hereunder and under any other Finance Document, shall become forthwith due and payable, without presentment, demand, protest or any other notice of any kind, all of which are hereby expressly waived by the Issuer, anything contained herein or in any other Finance Document to the contrary notwithstanding. . . .

(*Id.*, Art. VII(l).) Pursuant to the Note Agreement, Cimontubo is entitled to Default Interest in the amount of 8.5% per annum if PDVSA is in default of its payment obligations under the Promissory Note or enters an "Event of Default" and, as a result, Cimontubo accelerates the Promissory Note. (*Id.*, Art. II, § 2.04.)

> Regarding the guarantee provisions, the Note Agreement provides in relevant part:
>
> The Guarantor hereby agrees that it is jointly and severally liable for, and, as primary obligor and not merely as surety, absolutely, irrevocably and unconditionally guarantees to the Noteholders . . ., the prompt payment when due, whether at stated maturity, upon acceleration or otherwise, and at all times thereafter, of the Obligations and all costs and expenses including all court costs and attorneys' and paralegals' fees (including allocated costs of in-house counsel and paralegals) (which obligation in respect of counsel shall be limited to one counsel for the Noteholders . . . as well as, in each case, other special and local counsel) and expenses paid or incurred by the Noteholders . . . in endeavoring to collect all or any part of the Obligations from, or in prosecuting any action against,

3

the Issuer or any other guarantor of all or any part of the Obligations (such costs and expenses, together with the Obligations, collectively the "Guaranteed Obligations").

(*Id.*, Art. VI, § 6.01.) Finally, if Cimontubo is required to enforce its rights pursuant to the Note Agreement, PDVSA agreed to pay all costs and attorneys' fees. (*Id.*, Art. IX, § 9.05.)

## B. PDVSA Defaults under the Note Agreement and Promissory Note.

PDVSA made the first four interest payments required by the Promissory Note and Note Agreement. On April 19, 2017, Banco BIC Portugues, S.A. ("Banco BIC"), Cimontubo's bank, received $572,508.75 from PDVSA. (Exhibit 9, ECF No. 17-9.) On June 29, 2017, Banco BIC received $585,197.24 from PDVSA. (Exhibit 10, ECF No. 17-10.) On October 25, 2017, Banco BIC received €496,969.40 from Banco Espirito Santo, S.A. ("Banco Espirito"), PDVSA's bank. (Exhibit 11, ECF No. 17-11.) On January 18, 2018, Banco BIC received €472,007.47 from Banco Espirito. (Exhibit 12, ECF No. 17-12.)

After PDVSA's payment on January 18, 2018, Cimontubo received no further payments from PDVSA. (Reply Decl. of Paulo Amaral ("Amaral Decl."), ECF No. 17, ¶ 12.) Indeed, Cimontubo and Banco BIC have no record of any rejected payments from PDVSA after that date. (*See* Letter dated December 2, 2020, ECF No. 21; Amaral Decl., ¶ 12; Exhibit 3, ECF No. 32-3, at 3.) On November 7, 2019, Cimontubo sent default notice to Defendants via email and letter in accordance with the notice provision of the Note Agreement. (Pereira Aff., ¶¶ 27–34.) After PDVSA failed to cure its nonpayment, an Event of Default occurred on November 12, 2019, five days following PDVSA's receipt of notice, and December 7, 2019, thirty days following PDVSA's receipt of notice. (*Id.* ¶¶ 33–34.) On November 13, 2019, Cimontubo sent notice of default and acceleration to Defendants via email and letter in accordance with the notice provision of the Note Agreement. (*Id.*, ¶¶ 35–37.) After PDVSA failed to cure its nonpayment, an Event of Default occurred on November 18, 2019, five days following PDVSA's receipt of notice, and December

13, 2019, thirty days following PDVSA's receipt of notice. (*Id.* ¶¶ 41–42.) On November 18, 2019, Cimontubo sent another default notice to Defendants via email, fax and letter in accordance with the notice provision of the Note Agreement. (*Id.*, ¶¶ 43–47.) After PDVSA failed again to cure its nonpayment, an Event of Default occurred on November 23, 2019, five days following PDVSA's receipt of notice, and December 18, 2019, thirty days following PDVSA's receipt of notice. (*Id.* ¶¶ 49–50.) On November 28, 2019, Cimontubo sent notice of default and acceleration to Defendants via mail. (Pereira Aff., ¶¶ 51–52.) After PDVSA failed to cure its nonpayment, an Event of Default occurred on December 3, 2019, five days following PDVSA's receipt of notice, and December 28, 2019, thirty days following PDVSA's receipt of notice. (*Id.* ¶¶ 53–54.) Finally, on December 5, 2019, Cimontubo sent notice of default and acceleration to Defendants by letter delivered personally to Defendants' offices in accordance with the notice provision of the Note Agreement. (*Id.*, ¶¶ 56–58.) After PDVSA failed to cure its nonpayment, an Event of Default occurred on December 10, 2019, five days following PDVSA's receipt of notice, and January 5, 2020, thirty days following PDVSA's receipt of notice. (*Id.* ¶¶ 59–60.)

Defendants failed to pay $38,330,317.15 due and owing under the Promissory Note and Note Agreement. (*Id.*, ¶ 24.) Plaintiff asserts that, as a result, it is entitled to Default Interest in the amount of $1,803,100.12. (*Id.*, ¶ 25.)

**C. Procedural History.**

On June 11, 2020, Plaintiff filed its motion for summary judgment in lieu of complaint pursuant to N.Y. C.P.L.R. § 3213 in the Supreme Court of the State of New York, New York County. (Summons, ECF No. 1-1.) On July 13, 2020, Defendants removed this action to the United States District Court for the Southern District of New York. (Notice of Removal, ECF No. 1.) On August 20, 2020, Defendants filed a cross motion pursuant to Rule 56(d), requesting that

this Court deny or defer consideration of Plaintiff's motion for summary judgment to provide Defendants a reasonable time to conduct discovery. (Not. of Defs.' Cross-Motion Pursuant to Fed. R. Civ. P. 56(d), ECF No. 13.) Defendants assert that the Nicolas Maduro government, an illegitimate authority that is not recognized by the United States, has usurped control of the Venezuelan Government and its entities from the Juan Guaidó government, the authority recognized by the United States. (Mem. of Law in Resp. to Pl.'s Mot. for Summary J. and in Support of Defs.' Cross-Mot. Pursuant to Fed. R. Civ. P. 56(d), ECF No. 14, at 9–11.) As a result, Defendants do not have access to any documents or personnel. (*Id.*)

During oral argument on December 1, 2020, for the reasons stated on the record, this Court granted in part and denied in part Defendants' request for leave to conduct discovery, permitting discovery of two Portugal banks, Banco Espirito and Banco BIC, for the production of "documents that indicate an attempted wire transfer between [the] parties that was not honored by" either bank. (Tr. dated December 1, 2020, ECF No. 24, 45:6–46:11.) Defendants requested this discovery in order to ascertain whether the imposition of sanctions by the U.S. Government against PDVSA and the prohibition on the transfer of funds from PDVSA through the United States rendered it impossible for Defendants to make payment pursuant to the Promissory Note and Note Agreement. (*Id.* at 16:7–14.) On December 10, 2020, Defendants requested the issuance of letters rogatory to Banco Espirito, Banco BIC, and a third Portugal bank, Novo Banco S.A. f/k/a Banco Espirito Santo, S. A. ("Novo Banco"). The letters rogatory requested responses no later than "January 4, 2021, or as soon as practicable." (*See e.g.* Letter of Request for Int'l Judicial Assistance, pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, to Novo Banco S.A. f/k/a Banco Espirito Santo, S.A., ECF No. 28, at 1.) This Court issued each of the letters rogatory that same day.

6

Since the issuance of the letters rogatory, Defendants received a document production from Banco BIC. (Pl.'s Letter dated February 4, 2021 ("February 4, 2021 Letter"), ECF No. 32, at 2.) Within that production, there is an email stating that "no transfers received from [PDVSA] with a destination of the CIMONTUBO company which have been the target of analysis and refusal by EuroBIC have been identified by EuroBIC." *Id.* This email contradicts any defense of impossibility by Defendants. Banco Espirito responded to the letter rogatory indicating that "all documents and information regarding former clients are now in the custody of Novo Banco." (Letter dated February 5, 2021 ("February 5, 2021 Letter"), ECF No. 33, at 1.) Regarding Novo Banco, a judicial clerk with the Tribunal Judicial da Comarca de Lisboa (the "Portuguese Court") advised Defendants that the Portuguese Court did not order "Novo Banco to provide the documents requested in Schedule A" of the letter rogatory but requested a "videoconference examination of a Novo Banco witness." (February 5, 2021 Letter, at 2.) Thereafter, Defendants filed a petition to accelerate completion of discovery from Novo Banco on February 12, 2021. (Letter dated February 10, 2021, ECF No. 35, at 2.) As of the date of this decision, Defendants have not provided this Court with any update regarding the discovery, if any, from Novo Banco.

## II. LEGAL STANDARDS

It is well settled that a district court takes a removed action "in the posture in which it existed when it [was] removed from a state court's jurisdiction and must give effect to all actions and procedures accomplished in state court prior to removal." *Valley Nat. Bank v. Oxygen Unlimited, LLC*, No. 10 Civ. 5815 (GBD), 2010 WL 5422508, at *2 (S.D.N.Y. Dec. 23, 2010) (citing *Forest Corp. v. Shvili*, 152 F.Supp.2d 367, 387 (S.D.N.Y. 2001)). However, given that C.P.L.R. § 3213 is a procedural rule, once removed, the Federal Rules of Civil Procedure govern and the present motion for summary judgment will be treated as a motion made pursuant to Rule

56 of the Federal Rules. *See Counsel Fin. Servs., LLC v. Melkersen Law, P.C.*, 602 F.Supp.2d 448, 452 (W.D.N.Y. 2009) (citing *Solow v. Stone*, 163 F.3d 149, 151 (2d Cir. 1998)).

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's

favor. *See id.* However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS GRANTED

"Under New York law, to make out a prima facie case for recovery on a promissory note a plaintiff must simply show proof of a note and failure to make payment." *Beaufort Capital Partners LLC v. Oxysure Sys., Inc.*, No. 16 Civ. 5176 (JPO), 2017 WL 913791, at *2 (S.D.N.Y. Mar. 7, 2017); *Tabatznik v. Turner*, No. 14 Civ. 8135 (JFK), 2016 WL 1267792, at *5 (S.D.N.Y. Mar. 30, 2016). Where a noteholder has made out a prima facie case, the burden shifts to the payee to prove the existence of a defense against the note creating a triable issue of fact. *Beaufort*, 2017 WL 913791, at *2. Likewise, "in an action against a guarantor, a plaintiff must show: (1) the existence of the guaranty; (2) the underlying debt; and (3) the guarantor's failure to perform under the guaranty. *UMB Bank, N.A. v. Bluestone Coke, LLC*, No. 20 Civ. 2043 (LJL), 2020 WL 6712307, at *4 (S.D.N.Y. Nov. 16, 2020) (citing *ICBC (London) PLC v. Blacksands Pac. Grp., Inc.*, No. 15 Civ. 0070 (LAK), 2015 WL 5710947, at *2 (S.D.N.Y. Sept. 29, 2015)). "The burden then shifts to the defendant to raise a triable issue of fact in the form of a bona fide defense against the note." *UMB Bank*, 2020 WL 6712307, at *4 (citing *ICBC (London) PLC*, 2015 WL 5710947, at *2; *Torin Assocs., Inc. v. Perez*, No. 15 Civ. 8043 (NSR), 2016 WL 6662271, at *4 (S.D.N.Y. Nov. 10, 2016).)

Cimontubo has met its prima facie burden. It has established proof of the Note Agreement and Promissory Note. It has further shown the existence of Petróleo's guaranty. Defendants do not contest the validity of the Promissory Note and Note Agreement or their obligations pursuant

9

to these documents. Moreover, Plaintiff has sufficiently evidenced that PDVSA has failed to meet its payment obligations and that Petróleo has failed to meet its guaranty obligations.

On February 5, 2021, Defendants requested additional time to complete outstanding third-party discovery because they contend that there is a good faith basis to believe that they will find support for a defense of impossibility. (February 5, 2021 Letter.) This Court, however, permitted Defendants to conduct the discovery requested on December 1, 2020, stating that a decision on Plaintiff's motion for summary judgment would be deferred "until we get a response to th[e] subpoena or February 1, whichever comes first." (Tr. dated December 1, 2020, at 46:4–5.) Defendants have not put forth any evidence uncovered during that time period that would support an impossibility defense. Indeed, Defendants have been afforded an additional month beyond that deadline and the evidence Defendants *did* discover is inconsistent with an impossibility defense. (*See* February 4, 2021 Letter, ECF No. 32, at 3 (citing Ex. 3, ECF No. 32-3, at 3 ("[W]e [Banco BIC] indicate that . . . no transfers received from the Petróleos da [sic] Venezuela, SA company with a destination of the CIMONTUBO company which have been the target of analysis and refusal by [Banco BIC] have been identified by [Banco BIC].")).)[2]

Defendants have failed to raise a genuine issue of material fact regarding whether it was impossible for either Defendant to make payments under the Promissory Note and Note Agreement

---

[2] In support of their request to extend discovery, Defendants cite to a January 14, 2019 email exchange produced by Banco BIC. This email exchange, however, does not provide a basis to believe that additional discovery from Banco BIC would be fruitful. Defendants do not explain how an email between Cimontubo and Banco BIC, referencing an interest payment PDVSA *did* make under the Promissory Note and a separate payment from PDVSA pursuant to an unrelated contract, would justify additional time for discovery. (*See* Defs.' Resp. to Pl.'s Letter dated February 4, 2021, ECF No. 33, at 2; Ex. 2, ECF No. 34-2, at 3.) The present motion concerns payments PDVSA *did not* make under the Promissory Note and Note Agreement. This email does not lead to the conclusion that Defendants are likely to find evidence to support an impossibility defense to excuse their failure to pay under the Promissory Note and Note Agreement. This is especially so considering Banco BIC's statement that it has no record of rejected transfers from PDVSA.

to Plaintiff's bank in Portugal as a result of the U.S. Government's prohibition on the transfer of funds from PDVSA through the United States. Consequently, Plaintiff's motion for summary judgment is granted.

### IV. PLAINTIFF IS ENTITLED TO PRE-JUDGMENT AND POST-JUDGMENT INTEREST

"State law governs the award of pre-judgment interest." *Lagemann v. Spence*, No. 18 Civ. 12218 (GBD)(RWL), 2020 WL 7384009, at *4 (S.D.N.Y. Dec. 16, 2020) (citing *Schipani v. McLeod*, 541 F.3d 158, 164 (2d Cir. 2008)). Pursuant to New York law, a prevailing party seeking monetary damages is entitled to pre-judgment interest as a matter of right "upon a sum awarded because of a breach of performance of a contract. . . ." (N.Y. C.P.L.R. § 5001(a).) As a result of the Defendants' breach of the Promissory Note and Note Agreement, Plaintiff is entitled to pre-judgment interest as a matter of right. An award of post-judgment interest is also mandatory under 28 U.S.C. § 1961.

### V. CONCLUSION

Plaintiff's motion for summary judgment, (ECF No. 1), is GRANTED. Plaintiff is awarded damages in the amount of $40,133,417.27, attorneys' fees, costs, pre-judgment and post-judgment interest against Defendants, jointly and severally.

The Clerk of Court is directed to terminate the motions at ECF Nos. 13 and 34 accordingly.

This matter is referred to Magistrate Judge Gabriel W. Gorenstein for an inquest on attorneys' fees, costs, and interest.

Dated: New York, New York
      March 4, 2021

SO ORDERED.

*[signature: George B. Daniels]*

GEORGE B. DANIELS
United States District Judge