UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CIMONTUBO – TUBAGENS E
SOLDADURA, LDA,

                        Plaintiff,                    Case no. 20 Civ. 05382 (GBD)(GWG)

    - against –

PETRÓLEÓS DE VENEZUELA, S.A. and
PDVSA PETRÓLEO, S.A.,

                        Defendants.
------------------------------------------------------------------x

## PLAINTIFF'S REPLY MEMORANDUM OF LAW REGARDING CALCULATION OF AMOUNT OF JUDGMENT

April 20, 2021

Of Counsel:
    Stuart M. Riback
    Scott M. Watnik

**WILK AUSLANDER LLP**
825 Eighth Avenue, Suite 2900
New York, NY 10019
Tel.: (212) 981-2300

*Attorneys for Plaintiff Cimontubo Tubagens E Soldadura, LDA*

**TABLE OF CONTENTS**

**PAGE**

ARGUMENT ................................................................................................................................. 1

    I.    The Note Agreement Provides for Default Interest on all Outstanding Amounts Immediately Following the First-Missed Payment ........................................................ 1

    II.   An Increased Interest Rate Upon Nonpayment is Standard Commercial Practice .................... 3

CONCLUSION ................................................................................................................................. 4

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Breed v. Ins. Co. of N. Am.*,
    46 N.Y.2d 351 (1978) ............................................................................................................... 2

*Citibank, N.A. v. Nyland (CF8), Ltd.*,
    878 F.2d 620 (2d Cir.1989) ...................................................................................................... 3

*In re Gas Reclamation, Inc. Sec. Litig.*,
    741 F. Supp. 1094 (S.D.N.Y. 1990) ..................................................................................... 2, 3

*Ins. Co. of New York v. Cent. Mut. Ins. Co.*,
    47 A.D.3d 469 (2008) ............................................................................................................... 2

**Other Authorities**

11 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 31:1 (4th
    ed. 1993) .................................................................................................................................. 1

https://www.merriam-webster.com/dictionary/outstanding ........................................................... 1

Plaintiff Cimontubo – Tubagens e Soldadura, Lda. ("Cimontubo") respectfully submits this reply memorandum in further support of its calculation of the interest due Cimontubo in connection with the summary judgment granted to it by the Court's March 4, 2021 Memorandum and Order (the "Order").

**Argument**

**I.     The Note Agreement Provides for Default Interest on all Outstanding Amounts Immediately Following the First-Missed Payment**

PDVSA's argument ignores basic English, the face of the Note Agreement, and typical practice in debtor-creditor arrangements.

First, PDVSA does not deny that the Note Agreement unquestionably provides in § 2.04(a) that, immediately upon any nonpayment, "all amounts outstanding under this Agreement and the other Finance Documents shall bear interest (after as well as before judgment), payable on demand, based on and computed on the basis of actual number of days elapsed on a year of 365 days, at a rate per annum equal to eight and one half percent (8.50%)."

The basic dictionary definition of "outstanding" is "unpaid." *See* https://www.merriam-webster.com/dictionary/outstanding (definition #2).  At the date of PDVSA's first nonpayment, the entire remaining balance of the Note was unpaid.  Despite PDVSA's semantic contortions, the word does not mean "amount currently due."  An offhand reference in Cimontubo's initial motion papers is not, and does not purport to be, a conclusive definition of the word as used in the parties' agreement. *See* 11 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 31:1 (4th ed. 1993) ("[T]echnical terms and words of art are to be given their technical meaning when used in a transaction within their technical field, and by case law to the effect that when words or terms having a definite legal meaning and effect are knowingly used in a written contract, the parties will be presumed to have intended the words or terms to have their proper legal meaning and effect, in

1

the absence of any contrary intention appearing in the writing."). Selecting words out of context is not persuasive.

The stepped-up 8.5% interest rate applies to "all amounts outstanding under this Agreement and the other Finance Documents." "Finance Documents" is defined to include "this Agreement, the Notes and any other document executed in connection with the foregoing." The step-up thus applies to an amount outstanding under the Agreement and also to an amount outstanding under the other Finance Documents. *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978) ("'It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed'"). It is obviously meant to be inclusive of all amounts possibly due; obviously there is no rational business reason to continue a credit at a low rate after the debtor fails to make a payment, and it is in the creditor's interest to protect its expenditure. *See e.g., In re Gas Reclamation, Inc. Sec. Litig.*, 741 F. Supp. 1094, 1098 (S.D.N.Y. 1990) ("Under New York law, an agreement to pay an increased interest rate on default is …compensation for the increased risk of non-collection.").

There are clearly amounts that are due under the Note Agreement but not under the Note. For example, Cimontubo's expenses and attorneys' fees are amounts due under the Note Agreement but not under the Note. (The cost to calculate and check the pre-judgment interest on these bills was likely to exceed the amount of interest, which is why Cimontubo did not request it). Therefore, PDVSA's obligations under the Note Agreement and Note are not coterminous. Because they are not coterminous, the Note does not define the full scope of PDVSA's obligations under the Note Agreement. So the language of the Note does not limit the application of the 8.5% default rate.

As a result, no matter what the Note may provide with respect to increasing the interest rate on all amounts once there was a nonpayment of any amount, that does not override the provisions of the Note Agreement. *Ins. Co. of New York v. Cent. Mut. Ins. Co.*, 47 A.D.3d 469, 471 (2008) ("A

contract should be "read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose'"). The Note Agreement is, after all, the negotiated contract between the parties; the Note is part of the ***implementation*** of the Note Agreement.

## II. An Increased Interest Rate Upon Nonpayment is Standard Commercial Practice

Second, it is hardly commercially unreasonable to assess default interest on an entire debt once a debtor misses a payment. An increased interest rate upon nonpayment is an utterly common feature of debt instruments. *See e.g., In re Gas Reclamation, Inc. Sec. Litig.*, 741 F. Supp. 1094, 1098; *Citibank, N.A. v. Nyland (CF8), Ltd.*, 878 F.2d 620, 624–25 (2d Cir.1989) ("The notes provided for annual interest of four percent but, in the event of default, the rate would rise to six percent. . . [the] variable rates simply reflected the heightened risk of repayment that the creditor bears upon entry of default."). A term requiring a stepped-up interest rate upon nonpayment is the very opposite of "commercially unreasonable." *Id.*

Notably absent from PDVSA's papers is any explanation of why a debtor who misses a payment should be accorded the grace of continuing the initial interest rate rather than a default rate. Businesses may be courteous but they are not charitable. PDVSA has failed to raise a single credible reason as to why its calculation of interest should govern over Cimontubo's. Cimontubo's calculation of interest, however, is grounded by the express terms of the Note Agreement, as well as the expectations of the parties and commercial reasonableness. As such, Cimontubo's calculation of interest should be granted.

## CONCLUSION

Judgment should be entered in Cimontubo's favor in the following amounts: (a) principal of $35,720,631.43; (b) interest through April 2, 2021 in the amount of $10,486,693.72; (c) attorneys' fees and expenses through February 28, 2021 in the amount of $124,533.35, with the amount of fees and expenses for the subsequent period through April 2, 2021 to be provided as soon as available, and subsequently incurred attorneys' fees to be added to the judgment amount; and (d) post-judgment interest at a rate of 8.5%.

Dated:  New York, New York
        April 20, 2021

                                          Respectfully submitted,

                                          **WILK AUSLANDER LLP**

                                          By: /s/ Stuart M. Riback
                                                   Stuart M. Riback (SMR-2443)
                                                   Scott Watnik (SW-8120)
                                          825 Eighth Avenue – Suite 2900
                                          New York, New York  10019
                                          Tel.: (212) 981-2300

                                          *Attorneys for Plaintiff Cimontubo Tubagens e Soldadura, Lda.*